UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RICHARD SYKES,<br><br>                Plaintiff,<br><br>      v.<br><br>PIONEER TITLE OF ADA COUNTY,<br>AMERICAN BROKERS CONDUIT,<br>MORTGAGE ELECTRONIC<br>REGISTRATION SYSTEMS, INC.<br>(MERS), FEDERAL NATIONAL<br>MORTGAGE ASSOCIATION;<br>HOMEWARD RESIDENTIAL, INC.,<br>formerly known as AMERICAN<br>HOME MORTGAGE; NORTHWEST<br>TRUSTEE SERVICES, INC.,<br><br>                Defendants. | Case No. 4:11-cv-00377-BLW-LMB<br><br>**REPORT AND RECOMMENDATION** |

This action is before the Court on Defendant's Motion for Judgment on the

Pleadings. (Dkt. 72). Having reviewed the parties' briefing and the written record, the

Court finds that oral argument will not aid in the decisional process, and recommends

that Defendant's motion be granted and Plaintiff's Complaint (Dkt. 1-3) be dismissed.

## BACKGROUND

This action is a foreclosure challenge similar, if not identical, to many others filed

in this Court and around the county over the last few years.  In summary, Plaintiff argues

that mortgage lenders, loan servicers and/or trustees have unlawfully foreclosed upon his residential mortgage due to the securitization of his loan.  Plaintiff further contends that he was unable to negotiate an adequate loan modification, and that inability also forms a basis for this action. Plaintiff does not dispute that he defaulted on the loan.  Because this is a Fed. R. Civ. P. 12(c) motion, the following facts are taken entirely from Plaintiff's Complaint. (Dkt. 1-3).

By way of background, in 1996, Plaintiff purchased land at 100 Daggett Creek, Boise, Idaho, and a home was constructed on the property in 2003 ("Property"). In 2006, he refinanced the home with American Brokers Conduit. Plaintiff executed a promissory note ("the Note"), which was secured by a deed of trust (the "Deed of Trust"). A copy of the note is not contained in the record. The Deed of Trust lists American Brokers Conduit as the Lender, Pioneer Title as the Trustee, and MERS as "a separate corporation that is acting solely as nominee for Lender and Lender's successors and assigns" and the "beneficiary under this Security Instrument." (*Complaint*, Dkt. 1–3, Attachment A–1) ("Deed of Trust").

After refinancing, Plaintiff listed the house for sale but was unable to sell it. He then suffered a financial hardship after being injured.

In September 2010, he missed a payment. After missing this payment, the loan servicer, Defendant AHMSI, "threatened to foreclose." Plaintiff contacted AHMSI and was "offered modification through the HAMP, and/or other programs if HAMP would

not work." (Complaint, ¶ 13). Plaintiff alleges he was then informed that he would not qualify for a loan modification unless he missed three mortgage payments.  (*Id*.)

Allegedly unable to make his mortgage payment for several more months, Plaintiff again contacted AHMSI about negotiating a rate adjustment. He alleges he was informed then that he could not qualify for a rate adjustment because of the impact the missed payments had on his credit score. (Complaint, ¶ 3.16).

According to the pleadings, in February 2011, Plaintiff prepared and submitted a "HAMP packet" to AHMSI. (*Id*. at ¶ 3.17). On February 23, 2011, MERS executed an Assignment of Deed of Trust granting all beneficial interest in the Deed of Trust to AHMSI, "together with the note or notes therein described or referred to, the money due and to become due theron, with interest, and all right acrred or to accrue under said Deed of Trust." On March 1, 2011, AHMSI executed an Appointment of Successor Trustee appointing NWTS as the Trustee succeeding Pioneer Title. (Complaint, Attch.A–2, Dkt.1–3). On March 7, 2011, NWTS executed a Notice of Default indicating AHMSI's intent to sell the property to satisfy the obligation. The Assignment of the Deed of Trust, the Appointment of Successor Trustee, and the Notice of Default were all recorded together on March 9, 2011, in Idaho City, Boise County, Idaho. (*Id*.).

Plaintiff acknowledges that he received the Notice of Default and Notice of Trustee's Sale indicating the sale would take place July 21, 2011. (*Id*.; Attch. A–1, Dkt. 1–3, pp. 39–45.) In April, he alleges that when he inquired about his HAMP application,

he was told that "the correct documents were never received." ( *Id*. ¶ 3.20).  Plaintiff claims he submitted the HAMP application again on April 16, 2011. ( *Id.,* ¶ 3.21). He also claims to have submitted written requests to "the original lender, title company, trustee, and all the new alleged holders of Plaintiff's note and deed (all the defendants herein)," to view the original documents. ( *Id.,* ¶ 3.23).

Plaintiff alleges that the Defendants refused to provide access to the original documents, or to acknowledge "the qualified written requests (QWR)." ( *Id.,* ¶ 3.24). Plaintiff alleges that he then sent several requests to AHMSI and the other defendants for "verification of their interest and/or standing to be the servicer of Plaintiff's Note and Deed of Trust." ( *Id.,* ¶ 3.26). AHMSI refused to answer "all pertinent questions about interest and standing." ( *Id.,* ¶ 3.27).

On May 5, 2011, Plaintiff alleges that he was informed he did not qualify for the HAMP program, or any other loan modification programs. ( *Id.,* ¶ 3.28). In response, Plaintiff claims he asked for an explanation of what criteria he did not meet for these programs, to which AHMSI replied on June 17, 2011. ( *Id.,* ¶ 3.29.) Plaintiff requested an Alternative HAMP, and resubmitted a hardship letter and financial analysis, and asked that the trustee sale be postponed. ( *Id.,* ¶ 3.29; Attch. B–1, B–2). On July 8, 2012, AHMSI sent Plaintiff another HAMP application, indicating Plaintiff has until August 7, 2011, to respond. ( *Id.,* ¶ 3.30). Plaintiff re-submitted all of the requested documents before July 19, 2011. ( *Id.,* ¶ 3.30; Attch. C–1).  Nonetheless, AHMSI continued to

pursue the auction, which was scheduled for July 21, 2011. ( *Id.,* ¶ 3.32).  On July 20, 2011, one day before the scheduled foreclosure sale, Plaintiff filed the instant action in Idaho state court, which was later removed to the Federal District Court for the District of Idaho on August 15, 2011. (Dkt. 1).

On July 21, 2011, the Property was sold at auction and, on July 27, 2011, the Trustee's Deed was recorded in the official records in Boise County, Idaho as Instrument No. 232053. (*Id*., ¶ 3.32).  There is no dispute that Plaintiff defaulted under the express terms of the Deed of Trust. (*Id.* ¶¶ 3.12, 3.15).

Plaintiff claims that he continued to research the history of his Note and Deed of Trust and learned that the Note had been sold and securitized, and therefore removed from the state of Idaho, and that none of the Defendants possessed the actual "wet ink" Note or Deed of Trust. (*Id.,* ¶ 3.37). Plaintiff also alleges that he was never informed that the Note had been sold or transferred to any defendant in any manner. (*Id.,* ¶ 3.34).

Based on these factual allegations, Plaintiff brings this action against Mortgage Electronic Registration Systems, Inc. (MERS), Pioneer Title of Ada County, American Brokers Conduit, Federal National Mortgage Association ("Fannie Mae"), American Home Mortgage Servicing, Inc. (AHMS) and Northwest Trustee Services, Inc. (NWTS) alleging ten different causes of action.

MERS and AHMSI removed this action from state court on August 15, 2011. (Dkt.1). On September 21, 2011, Defendants Pioneer Title of Ada County, the original

trustee, and NWTS, the successor trustee moved to dismiss the complaint as against them for failure to state a claim for relief. (Dkts. 6, 22 & 32).  Judge Winmill granted the motion to dismiss on March 15, 2012. (Dkt. 59).  The remaining defendants now seek judgment in their favor on the pleadings.  (Dkt. 72).

## REPORT

### A.    Standard: Judgment on the Pleadings

Pursuant to Federal Rule of Civil Procedure 12(c), a judgment on the pleadings is properly granted when, "taking all allegations in the pleading as true, the moving party is entitled to judgment as a matter of law."  *McGann v. Ernst & Young*, 102 F.3d 390, 392 (9th Cir. 1996).  In determining whether a complaint states a cognizable claim under Rule 12(c), courts apply the same legal standards applicable to motions brought under Rule 12(b)(6) . *Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.*, 637 F.3d 1047, 1054, n. 4 (9th Cir. 2011) ("we have said that Rule 12(c) is functionally identical to Rule 12(b)(6) and that the same standard of review applies to motions brought under either rule").

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a plaintiff's claim for relief.  The relevant inquiry is whether the plaintiff's allegations are sufficient under Federal Rule of Civil Procedure 8(a), which sets forth the minimum pleading requirement, i.e., that the plaintiff provide a "short and plain statement of the claim showing that the pleader is entitled to relief," and "give the defendant fair notice of what

the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

When reviewing a motion to dismiss, the court must accept as true all non-conclusory, factual (not legal) allegations made in the complaint, *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Erickson v. Pardus*, 551 U.S. 89 (2007), and draw all reasonable inferences in favor of the plaintiff, *Mohamed v. Jeppesen Dataplan, Inc*., 579 F.3d 943, 949 (9th Cir. 2009).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  In addition, "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*.  In sum, dismissal may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001); *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

Further, the Court may not consider any evidence contained outside the pleadings without converting the motion to one for summary judgment.  *See* Fed. R. Civ. P. 12(b); *United States v. Ritchie*, 342 F.3d 903, 907-908 (9th Cir. 2003).  "A court may, however, consider certain materials-documents attached to the complaint, documents incorporated

by reference in the complaint, or matters of judicial notice-without converting the motion to dismiss into a motion for summary judgment."  *Id.* at 908 (citing *Van Buskirk v. CNN*, 284 F.3d 977, 980 (9th Cir. 2002); *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994); 2 James Wm. Moore et al., Moore's Federal Practice § 12.34[2] (3d ed.1999)).

After thoroughly reviewing Plaintiff's pleadings, liberally interpreting the claims made, and considering the applicable law, the Court finds, and thus concludes, that judgment on the pleadings is appropriate.  Taking all the allegations in the Complaint as true, there are insufficient facts to support any theory of liability or recovery and this action should be dismissed.

### B.      Breach of Fiduciary Duty (Claims 1 & 2)

Plaintiff's first and second causes of action are allegations that Defendants breached a fiduciary duty owed to Plaintiff.  In the first breach of fiduciary claim, Plaintiffs allege that Defendants "had superior knowledge regarding the consequences of the failure to procure the original loan, as well as the loan modification and delay of sale over the unsophisticated Plaintiff," that Plaintiff relied on Defendant's advice, and that "the position of trust, confidence, and reliance that [Defndants] occupied as Plaintiffs' alleged mortgage holder created fiduciary or quasi-fiduciary duties owed by [Defendants] to Plaintiff." (Complaint, ¶ 4.3). Plaintiff further alleges that Defendants breached the duty by "constructively refusing to cooperate with Plaintiff's efforts at a resolution of this matter" and acting in bad faith in violation of several named statutes. (*Id.,* ¶ 4.4).

Plaintiff's second breach of fiduciary duty claim is less clear.  In sum, it alleges that Defendants breached their fiduciary duty by refusing to postpone the trustee's sale or the foreclosure while Plaintiffs were in the process of trying to obtain a loan modification. (*Id.,* ¶¶ 5.2–5.5). The claim also refers to all other defendants as having fiduciary duties which were violated by failing to provide "meaningful contact information regarding who actually had the promissory note and deed of trust to prevent the trustee's sale." ( *Id.,* ¶ 5.3.)

"In order to establish a claim for breach of fiduciary duty, a plaintiff must establish that defendants owed plaintiff a fiduciary duty and that the fiduciary duty was breached." *Bushi v. Sage Health Care, PLLC,* 146 Idaho 764, 203 P.3d 694, 699 (2009) (citation and marks omitted); *see also Giles v. Gen. Motors Acceptance Corp.,* 494 F.3d 865, 880–881 (9th Cir.2007) (applying Nevada law).

Defendants move to dismiss Plaintiff's claims for breach of fiduciary duty on the basis that no fiduciary relationship exists between Plaintiffs and any Defendant. The Court agrees.

Regarding MERS, the Deed of Trust clearly states that MERS acts on behalf of the lender, or assigns. The Complaint is devoid of allegations against MERS beyond its act of assigning the Deed of Trust in its capacity as the nominal beneficiary. This claim fails to state a claim upon which relief may be granted.

Regarding Defendants AHMSI, FNMA, and un-served Defendant[1] American

Brokers Conduit, it is true that "[a] fiduciary relationship does not depend upon some

technical relation created by or defined in law, [and] exists in cases where there has been

a special confidence imposed in another who, in equity and good conscience, is bound to

act in good faith and with due regard to the interest in one reposing the confidence."

*Jones v. Runft, Leroy, Coffin & Mathews, Chartered,* 125 Idaho 607, 873 P.2d 861, 868

(Idaho 1994) ( *quoting Stearns v. Williams,* 72 Idaho 276, 240 P.2d 833, 840–41(Idaho

1952)). However, "[t]he facts and circumstances must indicate that the one reposing the

trust has foundation for his belief that the one giving advice or presenting arguments is

acting not in his own behalf, but in the interests of the other party." *High Valley*

*Concrete, LLC v. Sargent,* 149 Idaho 423, 234 P.3d 747 (Idaho 2010) (citing *Idaho First*

*Nat. Bank v. Bliss Valley Foods, Inc.,* 121 Idaho 266, 824 P.2d 841, 853 (1991) (quoting

*Burwell v. S.C. Nat'l Bank,* 288 S.C. 34, 340 S.E.2d 786, 790 (S.C.1986))).

A careful review and study of the Complaint reveals that Plaintiff makes no

factual allegations that are sufficient to support a claim to believe or establish that any

defendant was acting in Plaintiff's interests and not on its own behalf, or that of the

lender, as the loan servicer. *See Bliss Valley Foods, Inc.,* 824 P.2d at 852 ( *citing Black*

---

[1] It appears that Defendant American Brokers Conduit ("ABC") has not been properly served and has not appeared in this action.  Pursuant to Fed. R. Civ. P. 4(m), dismissal of ABC is proper for failure to properly serve.  However, even if service were proper, as discussed herein, dismissal of ABC is appropriate on the pleadings.

*Canyon Racquetball Club v. First National Bank,* 804 P.2d 900, 905 (Idaho 1991)

(debtor-creditor is generally not a fiduciary relationship)). Thus, the Complaint fails to

allege any facts supporting more than an arms-length, commercial relationship between a

borrower and the servicing entity for the loan in which no fiduciary obligations arise.

Accordingly, Plaintiff's claims for breaches of fiduciary duty against all

defendants fail to state a claim upon which relief may be granted. Those claims should

be dismissed.

### C.      Truth in Lending Act (TILA) Violation (Claim 3)

In the Third Cause of Action, Plaintiff allege that he "did not receive documents

and disclosures" from the Defendants as required under the Truth In Lending Act, 15

U.S.C. § 1601 *et seq.,* and is therefore entitled to damages and/or rescission rights "that

are revealed through a review of documents to be obtained through discovery."

(Complaint, ¶ 6.2). He also alleges that the "Defendants unlawfully split Plaintiff's note

and deed of trust, pooling and securitizing them, and removing them from the State

Idaho, caused the note to be null and void, leaving the Defendants without standing to

foreclose and sale [sic] Plaintiff's residence." ( *Id.,* ¶ 6.4.)

Defendants move to dismiss Plaintiff's TILA claim on the bases that Plaintiff fails

to allege any breach of TILA, and that the claims are time-barred. Alternatively,

Defendants argue that TILA does not apply to them because they are not the original

lender.

### 1. Sufficiency of Claims

Here, Plaintiff's allegations are vague, conclusory and  insufficient to support a violation of TILA. *See Marks v. Chicoine,* 2007 WL 160992, at *7 (N.D.Cal. Jan.18, 2007) (dismissing TILA claims for failure to allege how defendants violated the statute); *Tasaranta v. Homecomings Fin. LLC,* 2009 WL 3055227, at *3 (S.D.Cal.2009) (same). Plaintiff's allegations must be based on more than mere speculation. Plaintiff fails to allege how TILA was violated, and what documents or disclosures he was not provided, and how he relied upon these alleged inadequate documents or disclosures.

As noted previously, Plaintiff alleges that the documents and disclosures he did not receive cannot be revealed until he completes discovery. However, this only confirms that Plaintiff does not know whether he did or did not receive documents or disclosures that he should have.  As such, he cannot allege "enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570; *Iqbal,* 129 S.Ct. at 1949. Thus, the allegations of a TILA violation fail to state a claim upon which relief may be granted.

### 2. Statute of Limitations

The statute of limitations for a TILA claim is "one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e); *Shaw v. Lehman Bros. Bank, FSB,* 2009 WL 790166, at *4 (D.Idaho 2009). Time begins to run when the plaintiff enters into the loan agreement. *See King v. Cal.,* 784 F.2d 910, 915 (9th Cir.1986); *Shaw,* 2009 WL 790166, at *4. In this case, Plaintiff obtained the loan in 2006. (Complaint ¶ 3.2) The

Complaint was filed on July 20, 2011 (Dkt.1), long after the statute of limitations deadline. Accordingly, in addition to his allegation being factually insufficient to establish a claim, Plaintiff's TILA claims are also time barred and should be dismissed.

### D.     Idaho Trust Deed Act Violation (Claim 4)

Plaintiff's fourth cause of action alleges that Defendants violated the Idaho Trust Deeds Act, I.C. § 45–1501 *et seq.* The Idaho Trust Deeds Act ("Act") does not require the original promissory note and deed of trust to be produced to initiate non-judicial foreclosure proceedings. *Trotter v. Bank of New York et. al*, 275 P.3d 857 (Idaho 2012); *Meyer v. Bank of America, N.A.,* 2011 WL 458762, *3 (D.Idaho 2011). Rather, compliance with the procedures set forth in the Act is what is required.

The Act states that "a deed of trust executed in conformity with this act may be foreclosed by advertisement and sale" in accord with the procedures it describes. I.C. § 45–1503(1). The procedures are set forth in I.C. § 45–1505, which states that "the trustee may foreclose a trust deed by advertisement and sale" if four requirements are met:

> (1) The trust deed, any assignments of the trust deed by the trustee or the beneficiary and any appointment of a successor trustee are recorded in mortgage records in the counties in which the property described in the deed is situated; and

> (2) There is a default by the grantor or other person owing an obligation the performance of which is secured by the trust deed or by their successors in interest with respect to any provision in the deed which authorizes sale in the event of default of such provision; and

> (3) The trustee or beneficiary shall have (a) filed for record in the office of

the recorder in each county wherein the trust property, or some part or parcel, is situated, a notice of default identifying the deed of trust by stating the name or names of the trustor or trustors and giving the book and page where the same is recorded, or a description of the trust property, and containing a statement that a breach of the obligation for which the transfer in trust is security has occurred, and setting forth the nature of such breach and his election to sell or cause to be sold such property to satisfy such obligation ...

(4) No action, suit or proceeding has been instituted to recover the debt then remaining secured by the trust deed, or any part thereof, or if such action or proceeding has been instituted, the action or proceeding has been dismissed.

I.C. § 45–1505. Additionally, once the notice of default has been recorded, the trustee must give formal notice of the trustee's sale to parties specified in the statute. *See* I.C. § 45–1506. These are the only requirements that must precede foreclosure.

Here, Plaintiff's own accounting of the events confirms that the Appointment of Successor Trustee, Notice of Default, and Notice of Trustee's Sale complied with the statutory requirements and were recorded as specified in the statute.  (Complaint, ¶ 3.12, Attachment A-1, pp. 39-45).  Thus, Defendants complied with the requirements of the Act.  Furthermore, the Deed of Trust clearly intends that MERS act as the agent of the Lender, or its assigns, in administering the deed of trust, that it holds "legal title," and therefore has the authority to do so. *See Cervantes v. Countrywide Home Loans,* No. 09–17364 (9th Cir. Sept. 7, 2011); *Washburn v. Bank of America, NA, et al,* Case No. 1:11–cv–193–EJL–CWD, Report and Recommendation (Dkt.28) and Order Adopting Report and Recommendation, (Dkt.32). Finally, this Court agrees with the numerous decisions

rendered which hold that the securitization of the loan did not extinguish the security interest in the real property. *See, e.g., West v. Bank of America,* 2011 WL 2491295 at *2 (D. Nev. 2011); *Beyer v. Bank of America,* 800 F.Supp.2d 1157, 1159 (D. Or. Aug.2, 2011); *Hafiz v. Greenpoint Mortg. Funding, Inc.,* 652 F.Supp.2d 1039 (N.D. Cal. 2009); *Chavez v. California Reconveyance Co.,* 2010 WL 2545006 at *2 (D. Nev. 2010).

Accordingly, this Court finds, and thus concludes, that Plaintiff's claim for violation of the Idaho Trust Deeds Act fails to state a claim upon which relief may be granted and should be dismissed.

### E.     Real-estate Settlement Procedures Act (RESPA) Violation (Claim 5)

The Fifth Cause of Action alleges violations of the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2605 *et seq.* Plaintiff alleges that Defendants violated RESPA by failing to respond to certain "qualified written requests" within 60 days, as required under 12 U.S.C. § 2605(e). (Complaint, ¶ ¶ 8.1–8.4, Dkt.1). Plaintiff argues that he is entitled to statutory damages in the amount of $1,000 per occurrence, plus any further relief the Court deems equitable. (*Id.*).

Defendants move to dismiss the claim on three grounds: (1) Plaintiff fails to allege any conduct that amounts to a violation of RESPA, (2) Plaintiff's communications do not constitute "qualified written requests" triggering a duty under RESPA, and (3) Plaintiff's claim fails because Plaintiff has not alleged any actual harm which is required to make a claim under the statute.

This Court has previously held that "RESPA is a consumer protection statute, remedial in nature, and must be broadly construed to serve its purpose." *Burton v. Countrywide Bank, FSB*, 2012 WL 976151, *11 (D. Idaho, March 1, 2012).

Nonetheless, even assuming that Plaintiff's requests triggered RESPA obligations to acknowledge and respond, the Court cannot find a violation alleged in the pleadings. The exhibits attached to Plaintiff's Complaint show only that Defendants treated all requests for information as inquiries, acknowledged their receipt and responded accordingly. (*See* Complaint, Dkt. 1, Exhibits. B1, B2). Moreover, Plaintiff's RESPA claim must fail because he has not alleged any actual harm as the result of Defendant's alleged RESPA violations. 12 U.S.C. § 2605(f); *see Amaral v. Wachovia Mortg. Corp.*, 692 F.Supp.2d 1226, 1232 (E.D.Cal.2010); *Allen v. United Financial Mortg. Corp .*, 660 F.Supp.2d 1089, 1097 (N.D.Cal.2009). The statutory damages he claims are recoverable only where a plaintiff establishes a pattern and practice of RESPA violations, 12 U.S.C. § 2605(f)(1)(B), which Plaintiff has not alleged.

Accordingly, Plaintiffs RESPA claim also fails to state a claim upon which relief may be granted and should be dismissed.

## F.    Idaho Consumer Protection Act (Claim 6)

Plaintiff's Sixth Cause of Action alleges "Violation(s) of the Consumer Protection Act" (CPA) against all Defendants. (*Complaint,* ¶ ¶ 9.1–9.6, Dkt. 10).  These allegations are based on the contention that Defendants had no right to foreclose because MERS

lacked authority to appoint a successor trustee on the grounds that it lacked "standing" because the note and deed were "split" and removed from the state of Idaho and MERS is not registered to do business in the State of Idaho. ( *Id.,* ¶ 9.2). Plaintiffs also allege Defendants breached their fiduciary duties. ( *Id.,* ¶ 9.3). These actions, Plaintiff alleges, constitute "unfair and deceptive practices" in violation of the Idaho CPA. ( *Id.* § 9.4).

Plaintiff fails to specify which section of the Idaho CPA Defendants violated, though the allegations fit only, if at all, in the "catchall" provision which prohibits "[e]ngaging in any act or practice which is otherwise misleading, false, or deceptive to the consumer." I.C. § 48–603(17).

After carefully reviewing the Complaint, the Court concludes that Plaintiff's allegations fail to state a claim for violation of the CPA.  First, the allegations are far too vague and conclusory to meet the pleading requirements of *Iqbal* and *Twombly*. For example, the Complaint does not allege which Defendants committed any act considered unfair or deceptive under the CPA, or what harm or damage the acts caused to Plaintiffs.

Second, the allegations conflict with the factual record.  MERS did not appoint a successor trustee, but rather assigned the Deed of Trust before the trustee could initiate the foreclosure. As set forth previously, MERS clearly had the authority to assign the Deed of Trust under the agreements Plaintiffs signed.

Finally, as set forth herein, none of the defendants owed Plaintiff a fiduciary duty. Accordingly, Plaintiff's complaint fails to state a claim upon which relief may be granted

under the CPA and those claims should also be dismissed.

**G.      Infliction of Emotional Distress (Claims 7 & 8)**

Plaintiffs Seventh and Eighth Causes of Action allege intentional and negligent infliction of emotional distress related to the Defendants' "callous attitude," and "poor treatment of [Plaintiff] during this difficult time." (*Complaint*, ¶¶ 10.1 – 11.4)

"To prevail on a claim for intentional infliction of emotional distress: (1) the conduct must be intentional or reckless; (2) the conduct must be extreme and outrageous; (3) there must be a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress must be severe." *Mortensen v. Stewart Title Guar. Co.,* 149 Idaho 437, 235 P.3d 387, 396 (Idaho 2010). "To be actionable, the conduct must be so extreme as to 'arouse an average member of the community to resentment against the defendant,' and 'must be more than unreasonable, unkind, or unfair.' " *Id.* at 397.

Here, Plaintiff's allegations do not rise to the level of outrageous conduct required to state a claim upon which relief may be granted. In view of the fact that Plaintiff makes no claim that he did not owe the mortgage debt, or that it was not in default, the Court cannot find the refusal to stop the foreclosure process as being "outrageous."  As a matter of law, these allegations are not adequate to constitute conduct or actions sufficient to establish a claim for intentional infliction of emotional distress. *See id.*

To state a claim for negligent infliction of emotional distress, Plaintiffs must allege facts supporting "(1) a duty recognized by law requiring the defendant to conform

to a certain standard of conduct; (2) a breach of that duty; (3) a causal connection between the conduct and the plaintiff's injury; and (4) actual loss or damage." *Johnson v. McPhee,* 147 Idaho 455, 210 P.3d 563 (Idaho Ct.App.2009) (citing *Brooks v. Logan,* 127 Idaho 484, 903 P.2d 73, 78 (Idaho 1995); *Black Canyon Racquetball Club, Inc. v. Idaho First Nat'l Bank,* 119 Idaho 171, 804 P.2d 900, 904–05 (Idaho 1991); *Nation v. State Dept. of Correction,* 144 Idaho 177, 158 P.3d 953, 965 (Idaho 2007)). Plaintiffs must also allege "some physical manifestation of the [their] emotional injury." *Id.*

It is well established in Idaho that "[n]o liability exists under the law of torts unless the person from whom relief is sought owed a duty to the allegedly injured party." *Baccus v. Ameripride Serv., Inc.* 145 Idaho 346, 179 P.3d 309, 312 (Idaho 2008) (citing *Vickers v. Hanover Constr. Co., Inc.,* 125 Idaho 832, 875 P.2d 929, 932 (1994)). Though every person in our society has the duty to use reasonable care to avoid injury to another person that is "reasonably anticipated or foreseen," absent a special relationship, there is generally no duty to act affirmatively to assist or protect someone. *Id.* at 312–13 (citing *Coqhlan v. Beta Theta Pi Fraternity,* 133 Idaho 388, 987 P.2d 300, 311 (Idaho 1999). However, if one voluntarily assumes such a duty, he or she must carry it out in a non-negligent manner. *Id.* at 313 (citing *Coqhlan,* 987 P.2d at 312).

Further, one cannot maintain a tort claim for violation of a duty which is created by contract. *Id.* (citing *Steiner Corp. v. American Dist. Telegraph,* 106 Idaho 787, 683 P.2d 435, 438 (Idaho 1984)). To allege a tort claim, the duty must "be imposed by law

independent of that arising out of contract." *Id.*

Based on a review of the pleadings and attachments, the Court concludes that Defendants owed no duty to Plaintiff that could support a claim of negligence based on the foreclosure actions. Any duty relating to the foreclosure arises from the parties' agreements—the Note and the Deed of Trust. Plaintiff's allegations with respect to Defendants' actions in foreclosing therefore fail to state a claim for negligence.

Accordingly, this portion of Plaintiff's Complaint also fails to state a claim upon which relief may be granted for either intentional or negligent infliction of emotional distress and these claims should be dismissed.

### H.    Misrepresentation (Claim 9)

Plaintiff's ninth claim is for "misrepresentation by trustee" which states in part:

> 12.2. Plaintiff claims that by not informing Plaintiff, of the sale, that only NORTHWEST TRUSTEES, FANNIE MAE AND AMERICAN HOME MORTGAGE had the authority to postpone the foreclosure sale, these Defendants failed to allow Plaintiff the chance to get the remaining alleged missing paperwork in to the Defendants.
>
> 12.3. Plaintiff claims that the information provided by these defendants was material because reliance on such facts would result in the wrongful foreclosure sale of the Plaintiff's house.
>
> 12.4. Plaintiff claims that Plaintiff relied on the information and they [sic]were justified in their[sic] reliance because of the fiduciary relationship between themselves and the alleged defendants.

(Cmplt., ¶¶ 12.2 - 12.4). A claim for intentional misrepresentation, or fraud, requires: (1) a statement or a representation of fact; (2) its falsity; (3) its materiality; (4) the speaker's

knowledge of its falsity; (5) the speaker's intent that there be reliance; (6) the hearer's

ignorance of the falsity of the statement; (7) reliance by the hearer; (8) justifiable

reliance; and (9) resultant injury. *Lettunich v. Key Bank Nat. Ass'n*, 109 P.3d 1104, 1110

(Idaho 2005) (citing *Lindberg v. Roseth*, 46 P.3d 518, 522 (Idaho 2002).

The factual circumstances of each element of fraud must be plead with

particularity. Fed. R. Civ. P. 9(b). Here, the Complaint does not plead the elements in a

general sense, let alone with particularity.  Further, the thrust of Plaintiff's fraud

allegation, relate to allegedly not having been told about the trustee's sale.  This

allegation is clearly contradicted by other allegations and attachments to Plaintiff's

Complaint, wherein he alleges that he received the notice of the trustee's sale (to take

place in July 2011) in early March 2011. (*See* Cmplt., ¶ 3.19; Exh. A-1).   As such,

Plaintiff's claim for misrepresentation should also be dismissed.

I.      **Unlawful Securitization – Void Note and Deed of Trust (Claim 10)**

The allegations contained in Plaintiff's final claim relate to issues of "unlawful

splitting," which have been addressed previously. (*See, infra, Section D, Idaho Trust

Deed Act Violation*).  Here, Plaintiff also includes allegations violations of RICO and

14th Amendment due process rights.

This claim also fails because Plaintiff does not allege any factual bases to establish

a pattern of racketeering activity to support such a claim. Further, there nothing in the

Complaint supports a due process claim.  Accordingly, this claim should be dismissed.

**J.      Leave to Amend Complaint**

A dismissal without leave to amend is improper unless it is beyond doubt that the complaint "could not be saved by any amendment." *Harris v. Amgen, Inc.,* 573 F.3d 728, 737 (9th Cir.2009) (issued 2 months after *Iqbal* ). The Ninth Circuit Court of Appeals has held that "in dismissals for failure to state a claim, a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Service, Inc.,* 911 F.2d 242, 247 (9th Cir. 1990). The issue is not whether plaintiff will prevail but whether he "is entitled to offer evidence to support the claims." *Diaz v. Int'l Longshore and Warehouse Union, Local 13,* 474 F.3d 1202, 1205 (9th Cir.2007) (citations omitted).

The undersigned recommends granting Defendants' motion for judgment on the pleadings without leave to amend. The scenario giving rise to Plaintiff's complaint has been extensively pleaded, and there is simply no basis to conclude an amended pleading will save this action from dismissal.  In fact, it appears that all of the allegations in the Complaint are identical to claims that have already been pleaded and squarely rejected by this Court. *See Burton v. Countrywide Bank*, 2012 WL 976151 (D. Idaho 2012). In sum, there is no apparent path for relief, and amendment of the Complaint would be futile.

Accordingly, the undersigned recommends that the Complaint (Dkt. 1) be dismissed with prejudice.

## RECOMMENDATION

In accordance with the foregoing analysis, it is RECOMMENDED that:

1.  Defendant's Motion for Judgment on the Pleadings (Dkt. 72) be GRANTED;

2.  All other pending motions (Dkts. 51, 75, 78, 80, 81, 82, 83, and 84) be

    DENIED as MOOT; and

3.  Plaintiff's Complaint (Dkt. 1) be DISMISSED with prejudice.


DATED: January 7, 2013

Honorable Larry M. Boyle
U. S. Magistrate Judge


## OBJECTIONS

Written objections to this Report and Recommendation must be filed within

fourteen days pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1, or as a result the

right to raise factual and/or legal objections in the Ninth Circuit Court of Appeals may be

waived.  The parties are advised that this is a report and recommendation and not a final,

appealable order, and thus no appeal can be taken from this report and recommendation.